**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____X
In re:                                         :
                                               :
Complete Retreats, LLC, et al.,[1]             :        Chapter 11
                                               :        Case No. 06-50245
            Debtors.                           :        Jointly Administered
_____X

Appearances:

| | | |
|---|---|---|
| Christopher Panos, Esq. | : | For the Liquidating Trustee |
| Craig & Macaule, PC | : | on behalf of the Debtors |
| Federal Reserve Plaza | : | |
| 600 Atlantic Avenue | : | |
| Boston, MA | : | |
| | : | |

_____

[1] The Debtors are Preferred Retreats, LLC; Complete Retreats, LLC; T&H Villas, LLC; Town Clubs, LLC; Preferred Aviation, LLC; Preferred Retreats Travel Company, LLC; Preferred Retreats Design Group, LLC; P180, LLC; Private Retreats Steamboat, LLC; Private Retreats Telluride I, LLC; Private Retreats Kamalani, LLC; Private Retreats Summit, LLC; Private Retreats Tortuga, LLC; Private Retreats Whitewing, LLC; Private Retreats Belfair, LLC; Private Retreats Cabin 4, LLC; Private Retreats Cabin 8, LLC; Private Retreats Colinas, LLC; Private Retreats Yacht Club Tortola, LLC; Private Retreats Yacht Club Mediterranean, LLC; Private Retreats Casa Dorada, LLC; Private Retreats Teton I, LLC; Private Retreats Snake River I, LLC; Private Retreats Snake River II, LLC; Private Retreats Stowe II, LLC; Private Retreats Stowe III, LLC; Private Retreats Preserve Way, LLC; Private Retreats Highpoint, LLC; Private Retreats Tortola, LLC; Private Retreats Pinecone 305, LLC; Private Retreats Deer Valley I, LLC; Private Retreats Tahoe I, LLC; Private Retreats Tahoe II, LLC; Private Retreats Tahoe III, LLC; Private Retreats Belize, LLC; Preferred Retreats Hospitality, LLC; Private Retreats Powell II, LLC; Private Retreats Steamboat II, LLC; Private Retreats Powell III, LLC; Olde Cypress I PR, LLC; Olde Cypress II PR, LLC; PR Esperanza II, LLC; PR Esperanza III, LLC; Private Retreats Powell III, LLC; PR Vegas III, LLC; Private Retreats, LLC; Legendary Retreats, LLC; European Retreats, LLC; DR Abaco, LLC; Distinctive Retreats II, LLC (a/k/a Distinctive Retreats 2, LLC); Distinctive Retreats, LLC; DR MGM I, LLC; DR MGM II, LLC; DR MGM III, LLC; DR MGM IV, LLC; DR Cerezas, LLC; Private Retreats Nevis, LLC; A&K Destinations, LLC; A&K Luxury Automobiles, LLC; LR Management Company, LLC; New Retreats Holding Co., LLC; Private Retreats II, LLC; and Preferred Brokerage, LLC.

| | |
|---|---|
| Jeffrey Wiesner, Esq. : | |
| Stern Shapiro Weissberg & Garin, LLP : | |
| 90 Canal Street, Suite 500 : | |
| Boston, MA : | |
| | |
| Norman Kinel, Esq. : | For Objecting Parties Logue and |
| Lowenstein Sandler PC : | Mid-Atlantic Capital Foundation |
| 1251 Avenue of the Americas, 18th Floor : | |
| New York, NY : | |
| : | |
| Brian Dunefsky, Esq. : | |
| Withers Bergman LLP : | |
| 430 Par Avenue : | |
| New York, NY : | |

Alan H. W. Shiff, United States Bankruptcy Judge:

### MEMORANDUM & ORDER ON
### LIQUIDATING TRUSTEE'S MOTION TO APPROVE THIRD PARTY
### FUNDING AGREEMENT AND ASSIGNMENT OF CERTAIN
### PROCEEDS OF LOGUE LITIGATION

#### INTRODUCTION

The Liquidating Trustee, on behalf of the debtors (hereinafter, "Trustee"), moves for approval of his funding agreement ("Funding Agreement") with non-party CPC Group LTD ("CPC") (hereinafter, "Funding Motion"). If approved, the Trustee would ensure a minimum recovery for the estate and secure funding for his related litigation against Objecting Parties Geoffrey Logue and Mid-Atlantic Capital Foundation, Inc. (hereinafter, "Logue Defendants").[2] The Logue Defendants object primarily claiming that the funding agreement is champertous and against public policy. For the reasons

---

[2] The Trustee is the plaintiff in an adversary proceeding brought against Objecting Parties Logue and Mid-Atlantic Capital Foundation, Inc., and others, to recover certain payments and alleged fraudulent transfers for the benefit of the Trust. *See Douglas Evans, Trustee for the Complete Retreats Liquidating Trust, v. McGrath, et al.*, Adv. Pro. No. 08-5078 (Bankr. D. Conn.). In that adversary proceeding, the parties and the court have referred to the Objecting Parties as the "Logue Defendants" and will do so here. Attorney Evans is a successor trustee and is the "Trustee" defined herein.

2

that follow, the Trustee's Funding Motion is granted.

### BACKGROUND

The debtors filed separate Chapter 11 petitions on July 23, 2006. On July 27, 2006, the court ordered them to be jointly administered. A joint plan of liquidation ("Plan") was confirmed on November 30, 2007 and became effective on December 31, 2007. The Plan called for the establishment of a liquidating trust ("Trust") and the appointment of a liquidating trustee (previously defined as "Trustee"), which are both governed by a liquidating trust agreement (hereinafter, "LTA"). Pursuant to the Plan and LTA, the Trustee was granted certain powers including, the powers to: (1) settle claims brought by or against the Trust; and (2) take all other actions the Trustee reasonably deems necessary to maximize the Trust's assets. *See* Plan, § 6.2, LTA §§ 1.4, 3.12(u).

As noted, *see, supra*, note 2, on July 22, 2008, the Trustee commenced an adversary proceeding against the Logue Defendants and others, seeking to recover certain payments and fraudulent transfers (hereinafter, "Adversary Proceeding"). The Logue Defendants failed to appear and defend. The Trustee moved for entry of default, which entered on July 16, 2009. Thereafter, the Trustee moved for judgment against the Logue Defendants and requested an evidentiary hearing to assess damages. (*See* doc. ## 212, 214.) That hearing was scheduled for May 5, 2010, but did not proceed because the Logue Defendants filed an appearance on May 4, 2010, and, subsequently, a motion to vacate the default. (*See* May 4, 2010 docket entry text regarding telephonic status conference.) A hearing on that motion was scheduled for October 6-7, 2010, with a discovery bar date of September 17, 2010. Several related discovery motions and corresponding objections were filed before the discovery bar date. They were ultimately scheduled to be heard on September 29, 2010, immediately following a status conference to be held in the Adversary Proceeding.

The instant Funding Motion was filed on September 27, 2010. At the September 29th status conference, the court determined that the Funding Motion was related to the Adversary Proceeding and the discovery motions filed therein. Therefore, the court

marked off its docket the Adversary Proceeding discovery motions and the trial and, instead, scheduled a hearing on the Funding Motion for October 18, 2010. On that date, the Trustee informed the court that he had entered into an option agreement with CPC whereby, upon court approval, CPC would pay the Trustee an option premium in exchange for the option to enter into the Funding Agreement. If approved, CPC will: pay the Trust $1.25 million in exchange for the assignment of the first $1.5 million of any proceeds recovered from the Logue Defendants and 80% of any additional recovery from the Logue Defendants; fund the Trust's costs, fees, and expenses in prosecuting the Adversary Proceeding against the Logue Defendants; and pay costs and fees of a foreign proceeding the Trustee initiated in the United Kingdom ("UK") against the Defendant Logue and others. The Trustee argued: the LTA provides authority for him to enter into the Funding Agreement; the Liquidating Trust Plan Advisory Committee has approved the Funding Agreement; and that by entering into the Funding Agreement, he is locking in a substantial recovery for the Trust beneficiaries.

The Logue Defendants objected, arguing that the arrangement was champertous and against public policy. As the hearing progressed, it became apparent that the Logue Defendants had a contentious relationship with CPC's principal, Christian Candy, with whom they are engaged in acrimonious litigation in the UK. The Logue Defendants posited that, through his company CPC, Candy is seeking to help the Trustee merely as a means of harassing them.[3] Moreover, they argued that Candy's solicitor in the UK

---

[3] In his Funding Motion, the Trustee noted:

> On or about April 29, 2010, the Trust commenced a proceeding in the United Kingdom against Logue, and others, in the High Court of Justice, Chancery Division (the "UK Proceeding"), in which the Trust initially obtained a worldwide freezing order against the assets of Logue. On July 23, 2010, the Court in the UK Proceeding discharged the freezing order and made an interim cost order against the Trust (the "Cost Order") in the amount of £164,500 under the prevailing party "English rule." The Cost Order may be subject to increase or reduction. The [option premium] had

4

contacted the Trustee to suggest to the Trustee that he could have the Logue Defendants' assets frozen.[4]

## DISCUSSION

A.  *Standing*

The court must first determine whether the Logue Defendants are parties in interest with standing to object to the Trustee's Funding Motion. "Standing is a constitutional requirement and a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Heating Oil Partners*, No. 3:08-CV-

---

been used by the Trustee to pay the Cost Order.

Funding Motion at 4 n.2.

[4] At the conclusion of the hearing, the court directed the filing of post-argument memoranda wherein the parties were to address the issues of standing and champerty. The Trustee filed his memorandum on October 29, 2010. The Logue Defendants filed their responsive memorandum on November 20, 2010.

The Logue Defendants also filed, *without leave of court*, a supplemental declaration (doc. #2335) in support of their Objection. This prompted the Trustee to file his declaration in further support of his Funding Motion (doc. #2341). In turn, the Logue Defendants filed a combined reply and motion to strike the Trustee's declaration, together with exhibits, totaling over 500 pages (doc. #2344). The Trustee filed an opposition to the Logue Defendants' motion to strike and cross-moved to strike the Logue Defendant's declaration (doc. # 2348), to which the Logue Defendants filed a response and objection (doc. #2350).

The parties were neither directed nor granted permission to make these additional filing. Therefore, the court will not consider them in deciding the Funding Motion. Thus, the motions to strike by the Logue Defendants and the Trustee are denied as moot.

Moreover, to the extent the Logue Defendants requested, in a footnote in their post-argument memorandum, *see* Logue Defendants' Response Memo. at 3 n.2 (doc. #2340), an evidentiary hearing on the Funding Motion, that request is denied. The time to have made that request was prior to or at the October 18th hearing. To the extent the Logue Defendants claim (again, in their post-argument memorandum) there was criminal activity in the UK, the UK is the proper venue to raise that claim. Further, any claim the Logue Defendants believe they have for professional misconduct or fraud are not properly before the court; if appropriate motions are made, the court will then address those issues.

5

1976 (CSH), 2009 WL 5110838, *5 n.10 (D. Conn. Dec. 17, 2009) (further citation omitted). Section 1109(b) of the bankruptcy code states that "[a] party in interest . . . may raise and may appear and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b). "The term 'party in interest' is an elastic term 'designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case.'" *Heating Oil*, 2009 WL 5110838, at *5 (quoting *In re Johns-Manville*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984)). It is "meant to include parties whose rights are directly affected by the bankruptcy proceedings." *Id.* (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)). This is a case-by-case analysis, with courts focusing on "whether the party has a 'sufficient stake' in the proceeding to enable the party to participate." *Id.* (further citation omitted).

It is beyond peradventure that the Logue Defendants, who are parties in the Adversary Proceeding, are directly effected by the outcome of that proceeding and, therefore, have standing to challenge the Funding Motion.

B.   *Champerty and Public Policy*

Champerty has been defined as: "A bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." Black's Law Dictionary 231 (6th ed. 1990). In determining whether the Funding Agreement is champertous, the court looks to Connecticut law. *See* Funding Agreement, § 9.1 (stating that the agreement "shall be governed by and construed in accordance with" Connecticut law). The Logue Defendants rely upon the Connecticut Supreme Court's *Rice v. Farrell*, 129 Conn. 362 (1942), to support their position that the Funding Agreement is champertous. Even if *Rice* is binding precedent, the Logue Defendants' reliance on it is unavailing, as *Rice* clearly states: "[T]he common law doctrines of champerty and maintenance as applied to civil actions *have never been adopted in this state*, and the only test is whether a particular transaction is against public policy." *Id.* at 365 (emphasis added).

Likewise, the Logue Defendants' public policy argument is unpersuasive. Issues to consider when determine whether a funding agreement offends public policy include

whether the non-party funder: instigated the litigation; is required to consent to settlement of the litigation; has control of the direction of litigation; and, is a predatory lender taking advantage of an unwary plaintiff. *See id. generally* at 366-68.

  Here, the Trustee commenced the Adversary Proceeding years before he knew of or was engaged with CPC, so CPC had nothing to do with the Trustee's commencement of the Adversary Proceeding. Further and contrary to the Logue Defendants' contention, there has been no sale or transfer to CPC by the Trustee of his claims which would allow CPC to be the party pursuing the Trustee's fraudulent transfers and recovery claims. Rather, the Trustee continues to be the plaintiff prosecuting his action pursuant to the authority granted to him by the Plan and the LTA. *See* Plan, § 6.2(f); LTA, §§ 3.12(k), 3.12(u)  Likewise, under the terms of the Funding Agreement, the Trustee has ensured that he retains control of his rights and interests in the Adversary Proceeding, including the right to come to this court for approval of any settlement. *See* Funding Agreement, §§ 8.1, 8.2. Finally, the court notes that the Trustee is an experienced attorney and bankruptcy practitioner, which assuages any concern that he is an unwary plaintiff who was duped by a predatory financier into initiating the Adversary Proceeding. *Cf., Rice*, 129 Conn. at 366-67 (findings as against public policy the arrangement whereby "a stranger to litigation may properly assist a poor person [also referred to as a layman] to assert his rights, [but] such assistance is not permissible where the stranger is to share in the proceeds of the action").

  Moreover, the Funding Agreement provides important financial benefits to the Trust. The Trustee argues that without the Funding Agreement he has limited funds to finance the Adversary Proceeding, which could potentially result in the recovery of millions of dollars. Equally significant is that by entering into the Funding Agreement, the Trustee will secure a minimum recovery for the Trust beneficiaries. Clearly, this is in the best interest of the estate. Thus, the Funding Agreement is necessary and beneficial to the fair and efficient resolution of the Adversary Proceeding. *See generally Glinka v. Housecraft Indus. USA, Inc. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70-72 (2d Cir. 2002) (in the context of determining standing to bring suit, ruling that a secured creditor is permitted to join a trustee as plaintiff and to "assist" the trustee by

funding the litigation, and that such arrangement was both in the best interest of the bankruptcy estate and necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings). Accordingly, the Funding Agreement does not offend public policy.

## CONCLUSION

For the foregoing reasons, the Trustee's Funding Motion is GRANTED.

**SO ORDERED** this 14th day of April 2011 in Bridgeport, Connecticut.

Alan H. W. Shiff
United States Bankruptcy Judge